[Cite as *Jackson v. Cleveland Dept. of Bldg. & Hous.*, 2012-Ohio-3688.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97706

## JOHN JACKSON

PLAINTIFF-APPELLEE

vs.

## CITY OF CLEVELAND DEPARTMENT OF BUILDING AND HOUSING ETC., ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
## REVERSED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-728792

**BEFORE:**    Sweeney, P.J., Jones, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    August 16, 2012

**ATTORNEYS FOR APPELLANT**

Patricia McGinty Aston, Esq.
Carolyn M. Downey, Esq.
Assistant Law Director
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

**ATTORNEY   FOR APPELLEE**

Thomas I. Perotti, Esq.
Perotti Law Offices
7181 Chagrin Road, Suite 200-A
Chagrin Falls, Ohio 44023

JAMES J. SWEENEY, P.J.:

{¶1} The city of Cleveland ("the City") appeals the court's reversal of the City of Cleveland Board of Building Standards and Building Appeals' ("the Board") decision upholding the City's emergency demolition of John Jackson's property at 1602-1604 E. 82nd St. ("the property") without prior notice. After reviewing the facts of the case and pertinent law, we reverse the trial court's judgment.

{¶2} On October 29, 2009, the City received a complaint that part of the property had collapsed onto the sidewalk. City officials viewed the structure, declared it an emergency, particularly in light of the upcoming Halloween weekend, and ordered emergency demolition. The house was demolished on October 30, 2009. The City issued notice to Jackson on November 3, 2009.

{¶3} On April 28, 2010, a hearing was held before the Board. The City presented evidence, via a building inspector and exhibits, that the front porch of the house had collapsed onto the public sidewalk and that the damage was structural in nature. The City received a call from a neighbor who "heard when the structure fell" as well as "several complaints from the councilman and the adjoining neighbors." The City determined that it was a "serious hazard and it needed to be removed." The City "took action * * * immediately * * * [and] didn't wait. * * * So, we believe it was a reasonable action. We believe it was necessary to abate the nuisance."

**{¶4}** At the hearing, Jackson did not challenge that the situation was an emergency. Rather, he argued that he should have received notice prior to the demolition of his property.

**{¶5}** The Board unanimously upheld the City's action to demolish the property as an emergency without notice to Jackson. On June 9, 2010, Jackson filed an administrative appeal in the Cuyahoga County Court of Common Pleas challenging the Board's decision. On November 17, 2011, the court reversed the Board's decision, concluding that it "violates Jackson's State and Federal rights to due process and due course of law, contravenes State law, and is otherwise unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."

**{¶6}** The City appeals and raises five assignments of error for our review.

I. The common pleas court abused its discretion and erred when it reversed the Cleveland Board of Building Standards and Building Appeals' decision to uphold the City's actions in an emergency situation at the property and provide post-deprivation notice and hearing because that decision was supported by the preponderance of reliable, probative and substantial evidence.

II. The common pleas court erred as a matter of law when it held that the City violated Appellee's due process and/or constitutional rights by failing to give *prior* notice of its intention to demolish an unsafe structure in an emergency situation because the court disregarded the City's lawful acts under the "quick action" doctrine * * *.

III. The common pleas court erred as a matter of law when it found that Ohio Rev. Code § 715.26 and Cleve. Cod. Ord. § 3103.09 require prior notice of demolition by the City in an emergency situation.

IV. The common pleas court erred as a matter of law when it found that the post-deprivation hearing conducted by the Cleveland Board of Building

Standards and Building Appeals did not afford appellee the due process to which he was entitled.

V.   The common pleas court erred as a matter of law because appellee failed to prove that any code requirement at issue in this matter is unconstitutional as applied to his property including the City's exercise of its emergency demolition procedure in this case.

**{¶7}**   In an administrative appeal under R.C. Chapter 2506, the

common pleas court considers the "whole record," * * * and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. * * *

The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "*more limited* in scope." (Emphasis added.) *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 Ohio B. Rep. 26, 30, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id.* at fn. 4. "It is incumbent on the trial court to examine the evidence.  Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 261, 533 N.E.2d 264, 267.

*Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433

(2000).

**{¶8}**   Furthermore, this court has held that "[although] courts of appeals have a

limited scope of review on R.C. 2506 appeals, interpretation of a city's ordinance presents

a question of law that must be reviewed de novo."  *Moulagiannis v. Cleveland Bd. of*

*Zoning Appeals*, 8th Dist. No. 84922, 2005-Ohio-2180, ¶ 10.

{¶9} In its November 17, 2011 journal entry and opinion, the court found that the City failed to comply with Cleveland Codified Ordinances (C.C.O.) 367.04(b), which outlines the procedure the City must follow when notifying a property owner of housing violations.

{¶10} The court also found that the City failed to comply with C.C.O. 3103.09(h)(6), which states the following: "Notice of Intent to Demolish. * * * the [City] shall give written notice informing the owner * * * of the City's intention to demolish and remove the unsafe building or structure at least thirty (30) days before the intended action by the City. * * *."

{¶11} Finally, the court found that the City violated R.C. 715.26(B), which states, in pertinent part, that a municipality may:

> [p]rovide for the * * * removal of insecure, unsafe, or structurally defective buildings or other structures * * *. At least thirty days prior to the removal * * * of any insecure, unsafe or structurally defective building, [the City] * * * shall give notice by certified mail of its intention with respect to such removal * * * to owners of record of such property. * * * If any emergency exists, as determined by [the City], notice may be given other than by certified mail and less than thirty days prior to such removal * * *. If for any reason notice is not given * * *.[1]

{¶12} In its journal entry, the court found that the "City's decision to declare emergency is entitled to deference and may not be disturbed." However, it read R.C. 715.26 to "expressly require prior notice even when an emergency is determined to exist."

---

[1] The remainder of this sentence in the statute contemplates conditions under which municipalities can recover demolition costs from property owners. Although this scenario is not at issue, the drafters of the ordinance realized that a property owner may not receive prior notice of an emergency demolition.

Additionally, the court determined that C.C.O. 3103.09(j), which provides for the "prompt removal" of structures in the event of an "emergency," did not "obviate the need for prior notice" found in C.C.O. 3103.09(h)(6) and 367.04(b).

**{¶13}** Upon review, we find that the court erred as a matter of law in interpreting the above cited statutes and ordinances. Our reasoning follows.

**{¶14}** When construing a statute or ordinance, we are guided by several principles. One of the basic rules is that subsections of a statute do not exist in a vacuum, and statutes are to be read in their entirety. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. A second rule is that "we must * * * review the statutory language, reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage." *State ex rel. Portage Lakes Edn. Assn. v. State Emp. Rels. Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36.

**{¶15}** Generally, notice and an opportunity to be heard prior to the demolition of property by a municipality is required. *Cleveland v. Bedol*, 8th Dist. No. 93061, 2010-Ohio-1978. *See* C.C.O. 3103.09(h)(6); 367.04(b). This applies to "insecure, unsafe, or structurally defective buildings." R.C. 715.26(B); C.C.O. 3103.09(h)(6).

**{¶16}** However, C.C.O. 3103.09(j) clearly creates an exception to the general rule of notice. This subsection is titled "Cases of Emergency," and is set apart from the general section that authorizes the City to demolish a home for noncompliance with the building code after proper notice. C.C.O. 3103.09(j) states in pertinent part as follows:

"Cases of Emergency. In cases of emergency that, in the opinion of the Director, involve immediate danger to human life or health, the Director shall promptly cause the building, structure or a portion of those to be made safe or removed * * *."

{¶17} Additionally, R.C. 715.26(B) states that, in the event of an emergency, notice is no longer mandatory; rather, it becomes discretionary. "If any emergency exists, as determined by [the City], notice *may* be given * * * less than thirty days prior to such removal * * *. If for any reason notice is not given * * *." (Emphasis added.)

{¶18} A common definition for the word emergency is "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Merriam-Webster's Collegiate Dictionary* 407 (11th Ed.2006).

{¶19} In *Youngstown v. Huffman*, 7th Dist. No. 10 MA 72, 2011-Ohio-4753, the Seventh District Court of Appeals of Ohio analyzed an adminstrative appeal similar to the case at hand. Huffman's house was demolished by the city of Youngstown in July 2007 after a fire, and Huffman alleged that Youngstown failed to comply with the relevant ordinances and code sections regarding notice. At the hearing, Youngstown presented evidence that the city followed its procedure under the emergency demolition ordinances, Youngstown Codified Ordinances 1525.02 and 1525.05. *Huffman*, ¶ 6-17.

{¶20} The *Huffman* court found that if the city of Youngstown categorized the property as a safety concern under the ordinance, then notice was required.

> However, under Youngstown Codified Ordinance 1525.05, when a building is in a state of emergency, such that there is "actual and immediate danger of failure or fire or collapse of [it] or any part thereof so as to endanger life or property," then the City may take action "whether the [notice] procedure

elsewhere in this chapter has been instituted or not." Therefore, in emergency situations, the City may act to demolish a building without following the notice procedures found in Youngstown Codified Ordinance 1525.02.

*Id.* at ¶ 31.

**{¶21}** Furthermore, the *Huffman* court found that the "lawful demolition" did not violate due process.

[B]ecause the City determined the condition of the property was an emergency, it proceeded with demolition pursuant to Youngstown Codified Ordinance 1525.05, which does not require notice. Thus, there were no due process requirements the City had to meet before demolishing Huffman's property.

*Id.* at ¶ 39.

**{¶22}** In conclusion, we find that, in emergency situations, C.C.O. 3103.09(j) creates an exception to the general rule that notice is required prior to demolition of property. Our analysis is bolstered by R.C. 715.26(B), *Huffman*, and common sense. Assignments of error one, two, three, and four are sustained. Assignment of error five is moot. App.R. 12(A)(1)(c).

**{¶23}** Judgment reversed and case remanded to trial court for reinstatement of the Board's decision.

It is, therefore, considered that said appellant recover of said appellee its costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
JAMES J. SWEENEY, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR